UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SCHNEIDER DOCK & INTERMODAL FACILITY, INC., et al.,<br><br>　　　　Defendants. | Case No. 17-cv-05287-JST (JCS)<br><br>**ORDER RE FINAL SETTLEMENT AGREEMENT** |

The parties put a binding settlement on the record. They also agreed to prepare a written memorialization of that agreement. Finally, they agreed that, if there were any disagreements about the form and content of the written memorialization, the undersigned would resolve those disagreements and there would be no appeal from that decision. By letter dated August 13, 2019 the parties submitted disagreements about the written memorialization to the undersigned. The Court has now reached a decision on those disagreements. Attached to this Order as Exhibit A is the final settlement agreement reflecting those decisions. All parties are directed to sign this final agreement within 72 hours of the posting of this Order. Defendant is ordered to provide a draft note and deed of trust as contemplated by the settlement to Plaintiff within 24 hours of the posting of this Order. The parties are directed to negotiate the final form of the note and of the deed of trust so that they can be executed simultaneously with Exhibit A

**IT IS SO ORDERED.**

Dated: August 13, 2019

_____
JOSEPH C. SPERO
Chief Magistrate Judge

**Exhibit A**

**RELEASE AND SETTLEMENT AGREEMENT**

This Release and Settlement Agreement ("Agreement") is entered into by and between Plaintiff Californians for Alternatives to Toxics ("Plaintiff" or "CATs"), a nonprofit public corporation, on the one hand, and Defendants Schneider Dock and Intermodal Facility, Inc. ("SDIF"), a California corporation, Ryan Schneider, David Schneider, and Schneider Dock Industrial Park, LLC ("SDIP"), on the other hand. The Defendants are collectively referred to as "Defendants" or "the Schneider Parties"). When referring to all parties to the Agreement, the reference shall be the "Parties." The effective date ("Effective Date") of the Agreement shall be the date June 25, 2019, subject to the conditions and contingencies set for in Paragraph 1.a. through 1.c. of the Agreement.

**RECITALS**

A. There is now a pending litigation styled *Californians for Alternatives to Toxics v. Schneider Dock & Intermodal Facility, Inc. et al.*, before the United States District Court, Northern District of California, Case No. 3:17-cv-05287-JST ("Action"), pertaining to storm water discharges from a log handling facility owned and operated by SDIF and associated with industrial activity regulated pursuant to the National Pollutant Discharge Elimination System, General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 14-57-DWQ, issued pursuant to Section 402(p) of the Clean Water Act (33 U.S.C. §1342(p)), and, prior to July 1, 2015, regulated by Water Quality Order No. 91-13-DWQ, as amended by Water Quality Order 92-12-DWQ and 97-03-DWQ (hereinafter the "California General Permit").

B. Plaintiff CATs is a nonprofit public corporation that supports the protection of the environment from the effects of toxic chemicals, and the preservation and protection of the wildlife, waters, and natural resources of California.

C. Defendant SDIF is the lessee and operator of an approximately 10-acre facility at

990 West Waterfront Drive in Eureka, California (the "Facility"), primarily engaged in log handling. Defendant SDIP currently owns the land on which the Facility is located (as well as an additional approximately 12 contiguous acres and the adjacent dock). Defendant Ryan Schneider is the president of SDIF and current operator of record at the Facility. Defendant David Schneider previously jointly owned and operated the Facility with Ryan Schneider, and continues to serve as the sole manager of Defendant SDIP.

D. Plaintiff has alleged in the complaint filed on September 12, 2017 and its subsequent amendments to the complaint (the "Complaint") in the Action that Defendants violated the California General Permit and Clean Water Act. The Complaint references and includes as exhibits thereto the notices to each of the individual and entity Defendants of their alleged violations of the Clean Water Act and of Plaintiff's intention to file suit against Defendants.

E. Defendants have answered the Complaint, including all amendments thereto, and deny all claims, including that they violated the California General Permit and the Clean Water Act as alleged in the Complaint.

F. On March 19, 2019, the Court granted in part, and denied in part, Plaintiff's motion for partial summary judgment (See ECF No. 84).

G. The Parties participated in a settlement conference supervised by Chief Magistrate Judge Joseph C. Spero, United States District Court, Northern District of California. A settlement was reached and placed on the record on June 25, 2019. The Parties were directed to prepare this further documentation of the Agreement.

Now therefore, in consideration of the promises and covenants contained in this Agreement, and subject to each of the terms and conditions set forth immediately below, the Parties agree as follows.

**TERMS OF SETTLEMENT**

1. **Agency Review**:

    a. Plaintiff will, within five (5) calendar days of complete execution of the Agreement, submit a copy of the fully executed Agreement to the United States Department of Justice for the 45-day statutory review period set forth in 33 U.S.C. section 1365(c)(3). Plaintiff shall concurrently provide a copy to Defendants of this submission.

    b. Within ten (10) calendar days of expiration of the statutory review period, or receipt of non-objection from the Department of Justice, whichever is earlier, the Agreement becomes final, and the Parties shall file with the Court a Stipulation and Order that shall provide that the Complaint and all claims therein shall be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

    c. If for any reason the Department of Justice should request any changes to this Agreement or the Court should decline to order the dismissal, the Parties shall use their best efforts to work together in good faith to modify this Agreement within thirty (30) days, so that it is acceptable to the Department of Justice and the Court. Any modifications may be subject to further review and comments by the Department of Justice. If the Parties are unable to modify this Agreement in a mutually acceptable manner, this Agreement, including all representations, agreements, and obligations contained therein, shall become null and void. In this event, the Note and Deed of Trust shall be released, cancelled, and otherwise deemed null and void, and CATs shall lend its cooperation by executing all instruments required to reconvey the security interest and release and/or cancel the Note. If the Parties are able to agree to a modification of the Agreement, the Agreement becomes final effective and binding on all Parties.

2. **Facility Closure & Clean Up**

    a. Defendants represent and warrant that SDIF has ceased its operations at the Facility, except as to those activities necessary to complete all reclamation work, which will be completed at the direction by the California State Water Resources Board and North Coast Regional Water Quality Control Board (collectively "State Agencies"). SDIF shall complete all

such activities by October 1, 2019, and shall notify Plaintiff of the projected completion date based on information received from the State Agencies.

      b.    Prior to October 1, 2019, SDIF shall do the following: (i) remove all Facility operating equipment (except the debarker) and logs from its leased premises, including adjacent areas owned or leased by SDIP; any SDIF equipment remaining at the site after the October 1, 2019 deadline would be exclusively there for agency directed reclamation activity; (ii) remove all bark and wood waste pile(s); (iii) remove the wood waste material that has been spread on the surface of the Facility's North Yard; (iv) remove all berms located on the Facility's North Yard along West Waterfront Drive, and extending along the northern boundary; (v) clear all areas of existing concrete surfaces within Facility's leased premises by removing all materials and sweeping the surface; and (vi) remove from the Facility's South Yard all wood waste and bark material sufficient to restore the area to its gravel/dirt surface.

    **3.**    **Settlement Payment**.  Subject to the satisfaction of the condition of settlement set forth in Paragraph 1.a. through 1.c of the Agreement, Defendants shall pay to CATs the sum of six hundred thousand dollars and no cents ($600,000.00), hereinafter referred to as "the Settlement Payment."

      a.    Defendants shall be jointly and severally liable for the Settlement Payment.

      b.    The Settlement Payment shall be made within six (6) months of the date that this settlement was placed on the record, as set forth in Section G. of the Agreement, and no later than December 22, 2019.  To ensure timely funding of the Settlement Payment, David Schneider shall, concurrently with the execution of the Agreement, execute and deliver to CATs, care of its counsel, a promissory note ("Note") for the sum of $600,000, in favor of CATs, secured by a deed of trust ("Deed of Trust") against real property with sufficient equity to satisfy the Note in a form reasonably satisfactory to CATs.  Upon delivery of the Settlement Payment, the Note and Deed of Trust shall be released, cancelled, and otherwise deemed null and void.  CATs shall lend its cooperation, if required, by submitting timely escrow demands and executing

all instruments required to reconvey the security interest and release and/or cancel the Note in exchange for delivery of the Settlement Payment. CATs shall promptly return the original of said Note and Deed of Trust to David Schneider, care of his counsel, within five (5) business days following receipt of the Settlement Payment.

        c.        Payments shall be made by check payable to "<u>Law Offices of Andrew L. Packard Attorney-Client Trust Account</u>." The check shall be remitted to counsel for CATs (at the address for Mr. Packard set forth under the Notice provision herein below) and received on or before December 22, 2019. CATs shall be solely responsible for distribution of the funds, and CATs confirms as follows: (i) the sum of $10,000 shall be allocated and promptly delivered by CATs to Northcoast Environmental Center for partial mitigation to address potential harms from the alleged Clean Water Act violations in the Action, and which shall be used for projects to improve water quality in Humboldt Bay; and (ii) the sum of $590,000 shall be allocated to CATs for partial reimbursement of its reasonable investigative, expert, consultant, and attorneys' fees and costs incurred in the Action.

    **4.**        **Notice of Settlement and Dismissal of the Entire Action**. Within five (5) business days of date on which the Agreement is signed by all Parties, Plaintiff shall file a Notice of Settlement in the District Court, which shall inform the Court of the expected dismissal date consistent with Paragraph 1 of the Agreement. Within ten (10) business days of the expiration of the statutory review period, or receipt of non-objection from the Department of Justice, whichever is earlier, Plaintiff, through counsel, shall file a stipulation and proposed order dismissing the entire action with prejudice under F.R.C.P. 41 (a)(2). However, if the Department of Justice should respond in any way other than with a non-objection, the above-stated deadline shall not apply. In such case, once the Parties have satisfied the objection(s), as set forth in Paragraph 1.c. of the Agreement, Plaintiff, through counsel, shall file a stipulation and proposed order dismissing the entire action with prejudice under F.R.C.P. 41 (a)(2) within ten (10) business days. In the event that the Parties are unable to satisfy such objection(s) within thirty (30) days of receipt of the objection(s), this Agreement shall become null and void.

**5.     Parties to Bear Own Costs and Attorney's Fees.**  Except as otherwise provided herein, the Parties each acknowledge and agree that each Party is to bear his, her or its own costs and attorneys' fees incurred in connection with the Action up to the date of dismissal.

**6.     Release.**  CATs releases and discharges the Schneider Parties as set forth below:

a.     "Released Claims" refers to any and all claims arising from the Complaint and/or the Action, including without limitation, all claims for violation of the Clean Water Act, the California General Permit, injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed in the Complaint and/or the Action up to the date the case is dismissed.  "Released Claims" shall also include all claims which arise from or pertain to the Action, that were asserted or could have been asserted based on the facts alleged in the Action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to the subject matter of the Complaint and/or Action up to the date the case is dismissed.  "Released Claims" shall not include any claims that CATs may have against the Schneider Parties arising from or related to the enforcement or performance of this Agreement.

b.     In consideration of this Agreement and the terms and conditions set forth in this Agreement, CATs, its affiliates, subsidiaries, shareholders, officers, directors, partners, joint venturers, agents, employees, representatives, consultants, heirs, assigns, predecessors-in-interest, successors-in-interest, successor trustees, and insurers, past and present, fully and forever release and discharge the Schneider Parties, and each of them, as well as their affiliates, subsidiaries, shareholders, officers, directors, partners, joint venturers, agents, employees, representatives, consultants, heirs, assigns, predecessors-in-interest, successors-in-interest, successor trustees, and insurers, past and present, from any and all Released Claims, as defined in Section 6(a) of this Agreement.

**7. Acknowledgment of Release and Waiver of Section 1542.** Subject to the release terms set forth above:

a. Plaintiff understands and agrees that as a material consideration and inducement to enter into this Agreement, Plaintiff does hereby fully and finally release Defendants, and each of them, from all Released Claims. As a further consideration and inducement for this compromise settlement, Plaintiff waives all rights or benefits it may now have, or in the future may have, with respect to Released Claims, under the terms of Section 1542 of the Civil Code of the State of California, to the extent it may be applicable in the context of the limits provided in the Released Claims defined herein. Plaintiff, upon advice of counsel, does specifically and knowingly waive the application of California Civil Code section 1542 to this Agreement to the extent applicable.

b. Plaintiff further certifies that it has read the following provisions of California Civil Code section 1542:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

**8. No Admission of Liability**. Neither the transfer of any consideration, the doing of any of the acts referred to in this Agreement, nor anything else contained in this Agreement shall be taken or construed to be an admission by any Party of any claims, demands, controversies, grievances, actions, injuries, charges, complaints, suits, rights, losses, debts, judgments, expenses, causes of action, obligations, damages, liabilities and costs, fines, penalties including attorneys' fees, asserted by the remaining Parties, or any one of them.

**9. Understanding of Agreement**. The Parties, as a material consideration and inducement to enter into this Agreement, warrant and represent that in executing this Agreement

they fully understand the terms of this Agreement, having been counseled thereon by their attorneys. The Parties, and each of them, further represent and acknowledge that in executing this Agreement, they do not rely, and have not relied, upon any inducement, promise, representation and/or statement made by the remaining Parties, or any of them, or their respective agents, representatives and/or attorneys with regard to the subject matter, basis, meaning, effect, and/or fact of this Agreement and/or otherwise.

10. **Construction of Agreement**. This Agreement is the product of negotiation and preparation by and among the Parties and their respective attorneys. The Parties each acknowledge and agree that this Agreement shall not be deemed to have been prepared or drafted by one Party or another, and shall be construed as a whole according to its fair meaning and not for or against any Party hereto.

11. **Free and Voluntary Execution**. The Parties represent and acknowledge that they have each read this Agreement and understand all of its terms and execute this Agreement freely, voluntarily and without coercion, with full knowledge of its significance and the legal consequences thereof.

12. **Authority.** Each Party hereto represents and warrants to the other Parties that he, she or it has the full power and authority to execute, deliver and perform under this Agreement.

13. **Advice of Counsel**. Each Party warrants and represents that in executing this Agreement, the terms of this Agreement have been read and its consequences (including, but not limited to risks, complications, and costs) have been completely explained to him, her or it by an attorney of his, her or its own choosing; and that each fully understands the terms of this Agreement. Each Party further warrants and represents that it has not relied upon the advice or counsel of another Party's counsel in the negotiation, drafting, or execution of this Agreement.

14. **Successors and Assignment**. This Agreement shall be binding on, and inure to the benefit of, each of the Parties hereto and their respective successors in interest. The Parties each understand and expressly agree that this Agreement shall bind and benefit their respective

present and former officers, directors, employees, predecessors, successors, successor trustees, heirs, estates, beneficiaries and their estates and any trust created by any of them, executors, administrators, joint ventures, corporations, divisions, insurers, parents, subsidiaries, affiliates, partners, stockholders, agents, heirs and assigns.  The Parties each warrant that they have not transferred or assigned, or purported to transfer or assign, any of the rights released by this Agreement.

15. **Severability**.  If any provision or part of any provision of this Agreement shall for any reason be held to be invalid, unenforceable, or contrary to public policy or any law, then the remainder of this Agreement shall not be affected.

16. **Cooperation**.  Each Party to this Agreement shall cooperate fully in the execution of any and all other documents and in the completion of any additional actions that may reasonably be necessary or appropriate to give full force and effect to the terms and intent of this Agreement.

17. **Entire Agreement**.  This Agreement represents the entire understanding between the Parties, and each of them, in connection with the subject matter of this Agreement.  There are no oral or written representations, warranties, agreements, arrangements, or undertakings, between or among the Parties, or any of them, related to the subject matter of this Agreement, that are not fully expressed herein.  The terms of this Agreement are contractual and not mere recitals.  This Agreement cannot be altered or varied except by a writing duly signed by each of the Parties.

18. **Modifications to Agreement**.  This Agreement may be modified or amended only by a writing signed by all the Parties to this Agreement and subject to the 45-day statutory review period set forth in 33 U.S.C. section 1365(c)(3).

19. **Notices**.  Any and all notices or other communications required or permitted by this Agreement to be served or given by the Parties, or any of them, to the remaining Parties, or any of them, shall be in writing and shall be deemed duly served and given when deposited in the

United States mail, first-class postage prepaid, addressed as set forth below, and concurrently transmitted via electronic mail to the email addresses listed below:

    (a)    **To Californians for Alternatives to Toxics**

    Andrew Packard
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, California 94952
Email: andrew@packardlawoffices.com
        wncarlon@packardlawoffices.com

    William Verick
Klamath Environmental Law Center
1125 – 16th Street, Suite 204,
Arcata, California 95521
Email: wverick@igc.org

    (b)  **To the Defendants**

    Therese Y. Cannata
Cannata, O'Toole, Fickes & Olson LLP
100 Pine Street, Suite 350
San Francisco, California 94111
Email: tcannata@cofolaw.com

Each Party shall promptly notify all other Parties of any change in the above listed contact information.

    **20.**    **Governing Law**. This Agreement shall be construed pursuant to the laws of the United States and the State of California.

    **21.**    **Execution in Counterparts and Exchange of Signatures by Facsimile or PDF**. This Agreement may be signed in counterparts, each of which, when executed shall constitute an original, but such counterparts collectively, in their entirety, shall together, be considered one and the same Agreement. Facsimile or PDF signatures shall be treated as original signatures for purposes of this Agreement.

Dated: _____, 2019        Californians for Alternatives to Toxics

                      By: _____
                            Patricia Clary, Executive Director

| | |
|---|---|
| Dated: _____, 2019 | Schneider Dock & Intermodal Facility, Inc. |
| | By: _____ <br> Ryan Schneider, Chief Executive Officer |
| Dated: _____, 2019 | |
| | By: _____ <br> Ryan Schneider |
| Dated: _____, 2019 | Schneider Dock & Industrial Park LLC. |
| | By: _____ <br> David Schneider, Managing Member |
| Dated: _____, 2019 | |
| | By: _____ <br> David Schneider |